UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AARON FRANCOIS (#603619)

VERSUS

STEPHANIE LAMARTINIERE, ET AL.

CIVIL ACTION

NO. 16-637-SDD-RLB

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 24, 2019.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AARON FRANCOIS (#603619)

VERSUS

STEPHANIE LAMARTINIERE, ET AL.

CIVIL ACTION

NO. 16-637-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Cross Motions for Summary Judgment filed on behalf of plaintiff Aaron Francois (R. Doc. 203) and remaining defendants Rebecca Childs, Lt. Curtis Green, Lynette Jarvis, Dr. John Morrison, Major Carl Smith, and Dr. Paul Toce (R. Doc. 184).[1]  The defendants' Motion is opposed.  *See* R. Doc. 40.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Stephanie Lamartiniere, James LeBlanc, Jane Doe 4, Lynette Jarvis, Jannie Johnson, Rebecca Childs, Paul Toce, Curtis Green, Carl Smith, John Morrison, Jerry Helms, and John McCain complaining that his constitutional rights have been violated due deliberate indifference to his serious medical needs.[2]

The plaintiff moves for summary judgment relying upon the pleadings, a declaration that is not properly verified (R. Doc. 203-2)[3], a Statement of Undisputed Facts, his own declaration,

---

[1] "Jane Doe 4" also remains as a defendant in this matter but has never been identified or served.  Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding.  Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service and should attempt to remedy any defects of which he has knowledge.  It is appropriate, therefore, that the plaintiff's claims against defendant Jane Doe be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon her.

[2] Defendants Lamartiniere, LeBlanc, Johnson, Helms, and McCain were previously dismissed.  *See* R. Docs. 72, 162, 178, and 179.

[3] A declaration is not competent summary judgment evidence unless it contains statements that it was "made under penalty of perjury" and is verified as "true and correct."  See 28 U.S.C. § 1746; *Nissho-IwaiAm Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988); and *Johnson v. Attorney Office of Newman, Mathis, Brady & Spedale*, 2013 WL 6834381 at *5 (M.D. La. 2013).  The plaintiff's Declaration is insufficient as he does not verify his statements as true and correct.

the declarations of inmates Kelly and Grant, excerpts of his medical records, excerpts of his pertinent administrative remedy proceeding, various discovery responses, and the affidavits of defendants Green and Smith.  The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative remedy proceeding, a certified copy of the plaintiff's medical records, and the affidavits of defendants Green, Smith, Jarvis, Childs, Toce and Morrison.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is

appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

The plaintiff alleges the following in his Complaint: On April 20, 2016, the plaintiff began to experience severe stomach pains on his right side and flu like symptoms. He declared himself a medical emergency, and approximately 30 minutes later he was examined by defendant Jarvis who diagnosed the plaintiff with irritable bowel syndrome and administered a shot for nausea.

Later that night, the plaintiff began vomiting and having episodes of painful diarrhea. The following day, he filled out a sick call for severe stomach pains and flu like symptoms. Defendant Childs gave the plaintiff a bottle of Maalox for stomach pain. Later that evening, the plaintiff passed out in his cell and was taken to the prison hospital.

At the prison hospital, the plaintiff was treated by defendant Jarvis for irritable bowel syndrome, dehydration, and fever even though the plaintiff felt his symptoms were more serious. Defendant Jarvis was argumentative, and told the plaintiff, "I know what's wrong with you! You have irritable bowel syndrome, and you don't need to see any doctor for that." The plaintiff was returned to his housing unit although he was still experiencing severe stomach pain.

On April 22, 2016, the plaintiff stopped sick call EMT Butler and explained his symptoms. EMT Butler told the plaintiff he would get him to the hospital and the plaintiff was taken to the prison hospital later that afternoon. The plaintiff again explained his symptoms to

defendant Dr. Toce. He was treated for dehydration and fever by defendant Dr. Toce, who also ordered an x-ray of the plaintiff's stomach.

Defendant Dr. Toce told the plaintiff he had a stomach blockage, and the plaintiff expressed that he felt his illness was more serious than that. The plaintiff was given several doses of milk of magnesia by Jannie Johnson. When he attempted to explain the seriousness of his symptoms, he was told by Johnson, "Shut up and drink or you won't get any help from me." The plaintiff was then moved to prison ward 1, cell 9.

On April 23, 2016, the plaintiff's symptoms worsened, and he began experiencing painful diarrhea, vomiting feces, urinating blood and dehydration. The plaintiff was told he would be transferred to an outside hospital, and around 4:00 p.m. IV fluids were stopped and the plaintiff was told to not drink any water. The plaintiff began to experience trouble breathing and was placed on oxygen.

At 7:15 p.m., the plaintiff was placed in a diaper which he soiled prior to leaving the prison hospital while being pushed in a wheelchair by defendant Smith. Defendant Smith ignored the plaintiff's request to change his diaper and placed the plaintiff in the back seat of car and continued to ignore the plaintiff's request for 45 minutes.

During the two hour and 40-minute ride to UMC in New Orleans, the plaintiff made several requests for water which were denied by defendants Smith and Green. Defendants Smith and Green proceeded as if on a "joy ride," stopping to get food for themselves. The plaintiff again passed painful diarrhea, and defendant Green rolled down his window and commented, "All he does is shit and cry about everything."

At 10:40 p.m., the plaintiff arrived at UMC in New Orleans, where he was diagnosed with an abscess caused by a ruptured appendix. Surgery was performed, and the plaintiff was

discharged on May 3, 2016. The plaintiff was returned to ward 1, cell 9, and was only given Tylenol and ibuprofen for pain along with antibiotics.

On May 18, 2016, the plaintiff was seen by defendant Dr. Morrison and complained of pressure near his bladder. Defendant Dr. Morrison informed the plaintiff that the pressure would subside. On May 27, 2016, the plaintiff was seen by Dr. Helms who told the plaintiff that he could go back to being active even though the plaintiff complained of stomach pains and pressure when using the bathroom. After making further complaints, Dr. Helms ordered an x-ray of the plaintiff's stomach that was unremarkable.

On June 1, 2016, the plaintiff when to the prison hospital to have his blood drawn and was sent back to his housing area. The plaintiff thereafter filled out two sick calls and one emergency sick call for "his serious medical need," but he was not seen by a doctor. On June 5, 2016, the plaintiff began experiencing pain near his incision site. On June 6, 2016, he declared himself a medical emergency. Defendant Jane Doe 4 responded, but the plaintiff was not seen by a doctor.

On June 13, 2016, the plaintiff filled out a sick call in an effort to be seen by a doctor. As of the filing of his Complaint, the plaintiff had not been taken to the hospital to be examined regarding pressure in his pelvic area and discomfort when using the restroom. At some point, the plaintiff filed a grievance regarding his medical care, which was denied at the first step by former defendant Lamartiniere and at the second step by former defendant LeBlanc.

With regards to the plaintiff's claim against them, the moving defendants assert, *inter alia*, that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the moving defendants contend that the plaintiff's allegations and evidentiary

showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[4]

Undertaking the qualified immunity analysis with respect to the plaintiff's claim for deliberate indifference to his serious medical needs asserted against the remaining defendants,

---

[4] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts' discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

the Court finds that the defendants' motion for summary judgment should be granted. Specifically, the Court finds that there are no disputed questions of material fact tending to show deliberate indifference on the part of any remaining defendant.

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

The competent summary judgment evidence submitted by the moving defendants shows that the moving defendants were not deliberately indifferent to the plaintiff's serious medical needs. A review of the medical records reveals the following: On April 20, 2016, the plaintiff complained of flu like symptoms and severe abdominal pain. The plaintiff was transferred by ambulance to the prison treatment center and was examined by defendant Jarvis. Per the orders

of Dr. McCain, a 50 mg intramuscular injection of Benadryl was administered, and the plaintiff was not transported. *See* R. Doc. 184-4, p. 148.

On April 21, 2016, the plaintiff again complained of flu like symptoms and severe abdominal pain and was examined by defendant Childs. Six new medications were ordered, and the plaintiff was given Maalox. The encounter was reviewed by Nurse Practitioner Parks who agreed with the disposition. *See* R. Doc. 184-4, p. 147.

Later that evening, the plaintiff passed out in his cell and was transported to the prison treatment center. The plaintiff was examined by defendant Jarvis and complained of flu like symptoms and abdominal pain and noted two bowel movements which were runny and yellow. The plaintiff's temperature was slightly elevated. Per the orders of Dr. Lavespere, 2mg of loperamide and .125 mg of Levsin were administered. *See* R. Doc. 184-4, p. 145-146.

On April 22, 2016, the plaintiff was examined by defendant Dr. Toce. The plaintiff had three bowel movements while in the treatment center that were noted to be loose and brown. An x-ray was ordered, the plaintiff was given fluids, medications were administered, and the plaintiff was admitted for monitoring. *See* R. Doc. 184-4, p. 140-141. The radiologist's impression of the abdomen x-ray was a partial small bowel obstruction with a degree of small bowel distention in the left abdomen. Another x-ray of the plaintiff's abdomen and chest was taken, and a different radiologist's impression was also partial small bowel obstruction. *See* R. Doc. 184-4, p. 80 and 82.

On April 23, 2016, at 4:20 p.m., the plaintiff began vomiting dark liquid and having diarrhea with severe abdominal pain. Dr. Toce ordered that the plaintiff be given Zofran and transferred by patrol to University Medical Center ("UMC") in New Orleans. At this point, Dr. Toce was considering that the plaintiff was possibly suffering from appendicitis. At 7:05 p.m.,

the plaintiff exited the unit with defendants Smith and Green. *See* R. Doc. 184-4, p. 128, 133, and 134.

At UMC, the plaintiff was noted to be febrile and tachycardic. A CT revealed a pelvic abscess which was drained. The plaintiff continued to have fever and abdominal pain and a diagnostic laparoscopy resulting in an appendectomy was performed on April 27, 2016. *See* R. Doc. 184-4, p. 114.

On May 3, 2016, the plaintiff was transported back to the prison and was admitted to the NUI for observation. Norco was ordered for pain as needed by Dr. Macmurdo. On May 4, 2016, the plaintiff was discharged with orders for Tylenol and ibuprofen for pain along with antibiotics by Dr. McCain. *See* R. Doc. 184-4, p. 110-111.

On May 8, 2016, the plaintiff was examined by defendant Dr. Morrison who noted the plaintiff's complaint of pain when urinating. On May 27, 2016, the plaintiff was examined by former defendant Dr. Helms. The plaintiff complained of an epigastric burning sensation when exercising. The plaintiff was instructed to follow up in two weeks and take Metamucil as ordered. *See* R. Doc. 184-4, p. 100 and 102.

The plaintiff's care was thereafter assumed by Nurse Practitioner Parks resulting in an abdominal ultrasound being completed in November of 2016. The ultrasound revealed fatty infiltration of the liver and the radiologist's impression was steatohepatitis. *See* R. Doc. 184-4, p. 71-72, and p. 92-99.

The medical records do not show that any remaining defendant denied the plaintiff treatment, purposefully provided him improper treatment, ignored his medical complaints, or delayed medical care due to deliberate indifference. The plaintiff was promptly examined numerous times and treatment was provided as ordered. Once defendant Dr. Toce suspected

possible appendicitis, he ordered that the plaintiff be transferred to UMC. Even upon arrival at UMC, the appendectomy was not performed by those medical practitioners until several days later.

With regards to the transfer itself, there is no evidence of any purposeful delay on the part of defendants Smith and Green. At 7:05 p.m. the plaintiff was escorted by defendants Smith and Green from the treatment center. After departing that area, the plaintiff was eventually placed in a vehicle. In accordance with LSP policy defendants Smith and Green retrieved their weapons one at a time. After doing so, they left LSP with the plaintiff. Prior to leaving, defendants Smith and Green were told not to provide the plaintiff with any food or drinks. The transportation of the plaintiff was not considered a medical emergency that required transportation by an ambulance. Defendants Smith and Green were not accompanied by an EMT. Their task was a non-emergency transport.

Though they do not specifically recall, defendants Smith and Green admit that they may have stopped to use the restroom which would have been done one at a time so that the plaintiff would have been supervised at all times. The distance from LSP to UMC is approximately 136 miles or two hours and 20 minutes without traffic. In accordance with Louisiana law and department policy, the speed limit was obeyed at all times. *See* R. Docs. 184-5 and 184-6. Plaintiff alleges that the entire trip took two hours and 40 minutes. *See* R. Doc. 1-1 at 6. As such, it does not appear that defendants Smith and Green were "joyriding" as alleged by the plaintiff. The plaintiff arrived at UMC in a reasonable amount of time when the time taken to retrieve weapons and use the restroom is considered.

Though the plaintiff has submitted his own declaration and the declaration of inmates Wilbert Kelly and Perry Grant, nothing in these documents creates a genuine issue as to an

intentional delay in medical care. As previously noted, as soon as Dr. Toce suspected an appendicitis, he ordered that the plaintiff be transferred to UMC. Once at UMC, an appendectomy was not performed until April 27, 2016, and only after the plaintiff continued to have fever and abdominal pain.

As such, the plaintiff has not come forth with any competent summary judgment evidence showing that the alleged delay in his diagnosis was due to deliberate indifference. The declarations submitted by the plaintiff fail to show the existence of a genuine issue of material fact. While these documents show that it is possible that the moving defendants were aware of the plaintiff's previous escape attempt, they do not show that the moving defendants failed to treat the plaintiff, purposefully provided him improper treatment, or ignored his medical complaints. The documents also do not show that the moving defendants delayed medical care due to deliberate indifference. Accordingly, based upon the record before the Court, the moving defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the plaintiff's Cross Motion for Summary Judgment (R. Doc. 203) be denied. It is further recommended that the plaintiff's claims against Jane Doe 4 be dismissed, without prejudice, for failure to timely effect service upon her. It is further recommended that the remaining defendants' Motion for Summary Judgment (R. Doc. 184) be granted, the plaintiff's claims against these defendants be dismissed with prejudice, and this action be dismissed.

Signed in Baton Rouge, Louisiana, on May 24, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**